**Roscoe WALLACE, Appellant,**

v.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE–INSTITUTIONAL DIVISION and Gregg Irving, Appellees.**

No. 01–98–01364–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 30, 2000.

Roscoe Wallace, Huntsville, for Appellant.

Kevin Robert Lashus, Austin, for Appellee.

Panel consists of Justices O'CONNOR, HEDGES, and FRANK C. PRICE*.

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

FRANK C. PRICE, Justice (Assigned).

Roscoe Wallace, the appellant, appeals from the dismissal of a suit brought under the Texas Tort Claims Act against appellees, the Texas Department of Criminal Justice–Institutional Division (TDCJ) and Gregg Irving. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises out of an incident that allegedly occurred on April 19, 1996, when Wallace, an inmate of the TDCJ, injured his hand while operating a printer/slotter machine in the box factory at the prison. Irving was the plant manager of the box factory. According to Wallace, he was forced to operate this machine, which he believed to be unsafe. After the incident, Wallace was examined and treated for a fracture of his left hand.

On July 22, 1996, Wallace filed a step-one grievance alleging he was not getting proper medical care for the injury that had occurred at the box factory. The warden denied the grievance because Wallace's medical record indicated Wallace's health care needs had been addressed. On August 8, 1996, Wallace filed a step-two grievance, appealing denial of the step-one grievance. The regional director denied the step-two grievance on August 19, 1996.

On April 7, 1998, Wallace filed his original petition in the district court, alleging the defendants were negligent in relation to the operation of machinery at the box factory and in relation to medical procedures. He attached a declaration of inability to pay costs and a notarized statement of his prison account. He did not attach a statement indicating the nature and dates of any grievances he pursued, and he did not attach a statement regarding any other lawsuits he may have filed.[1]

On July 7, 1998, the trial court held a chapter 14 hearing during which the State questioned whether Wallace had exhausted his administrative remedies regarding the allegedly faulty machinery. The court, however, allowed the suit to proceed.

On August 21, 1998, Wallace filed copies of the grievance forms showing denial of his previous step-one grievance and his step-two appeal. On September 21, 1998, Wallace submitted a new step-one grievance claiming "intentional acts or omissions and gross negligence" in relation to the printer/slotter. The warden treated the 1998 grievance as encompassing the same subject matter as the 1996 grievances and denied the 1998 grievance. By sworn statement attached to the motion to dismiss, a TDCJ grievance investigator explained:

> [A]t the time of the alleged injury there was a three step process in place. In order to appeal the Step 2 Grievance, Mr. Wallace would have had to file a Step 3 Grievance within five (5) days. He never filed a Step 3 Grievance. Therefore, after the deadline, the Step 1 and Step 2 decisions became final and his remedies were exhausted. On September 21, 1998 Mr. Wallace again filed a Grievance relating to the alleged injuries he received back in 1996. . . . This grievance concerned the same subject matter as the earlier grievance and was filed over two years later, clearly filed outside the deadline for filing a grievance. Therefore, the most recent grievance was denied.[2]

Finally, Wallace filed a first amended original petition. He alleged negligence only in relation to the machinery. The defendants filed a response and motion to dismiss. They argued dismissal was appropriate because (1) the Tort Claims Act suit against Irving was frivolous because

---

1. On September 29, 1998, Wallace executed an affidavit stating he had never previously filed a civil action.

2. The warden, however, stated he was denying the 1998 petition on the ground that Wallace had not exhausted his administrative remedies in 1996.

the Act does not govern suits brought directly against an employee of the State, (2) Wallace's suit was untimely filed, and (3) Wallace failed to file the statutorily required affidavits. The trial court granted the motion and dismissed the action with prejudice.

## DISCUSSION

■ In three issues, Wallace contends the trial court erred in dismissing the case. In issue one, he contends the trial court erroneously dismissed his case as frivolous. In issue two, he contends the trial court erroneously dismissed his case as untimely. In issue three, he contends the trial court erroneously dismissed his case because he did not attach the required affidavits.

■ Wallace's suit is subject to the requirements of chapter 14 of the Civil Practice and Remedies Code. *Thompson v. Henderson,* 927 S.W.2d 323, 323 & n. 1 (Tex.App.—Houston [1st Dist.] 1996, no writ). In reviewing the trial court's decision to dismiss a case subject to chapter 14, an appellate court applies an abuse-of-discretion standard of review. *Hickson v. Moya,* 926 S.W.2d 397, 398 (Tex.App.—Waco 1996, no writ); *see Clark v. J.W. Estelle Unit,* 23 S.W.3d 420, 421 (Tex. App.—Houston [1st Dist.] 2000, pet. filed) (applying abuse-of-discretion standard to dismissal for not complying with requirements of Civil Practice and Remedies Code section 14.004); *Samuels v. Strain,* 11 S.W.3d 404, 406 (Tex.App.—Houston [1st Dist.] 2000, no pet.) (applying abuse-of-discretion standard to dismissal on grounds of frivolousness under chapter 14). *A court abuses its discretion if it acts without reference to guiding rules or principles. Samuels,* 11 S.W.3d at 406.

■ When a dismissal order does not state the specific grounds on which it was granted, *a party appealing from the judgment rendered pursuant to that order must show that each of the independent arguments alleged in the motion to dismiss* is insufficient to support the order. *See Morris v. Collins,* 916 S.W.2d 527, 530 (Tex.App.—Houston [1st Dist.] 1995, no writ) (O'Connor, J., concurring) (stating rule as applying to both summary judgments and dismissal orders and citing *Gannon v. Baker,* 830 S.W.2d 706, 709 (Tex.App.—Houston [1st Dist.] 1992, writ denied)), *disagreed with on other grounds in Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 n. 2 (Tex.1999) (per curiam). Although Wallace addresses all three grounds raised in the motion, his inability to show his petition was timely is dispositive.

■ An inmate must prove he exhausted all administrative remedies within the penal grievance system before initiating a lawsuit. *See Pedraza v. Tibbs,* 826 S.W.2d 695, 699 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.) (stating rule in context of chapter 13 case). The written decision denying Wallace's step-two grievance was signed August 19, 1996. As explained by the grievance investigator, Wallace exhausted his administrative remedies, and his 1996 grievance became final on August 24, 1996, i.e., five days after his step-two grievance was denied.

Civil Practice and Remedies Code section 14.005 provides in relevant part:

(a) An inmate who files a claim that is subject to the grievance system established under Section 501.008, Government Code, shall file with the court:

(1) an affidavit or unsworn declaration stating the date that the grievance was filed and the date the written decision described by Section 501.008(d), Government Code, was received by the inmate; and

(2) a copy of the written decision from the grievance system.

(b) A court shall dismiss a claim if the inmate fails to file the claim before the 31st day after the date the in-

mate receives the written decision from the grievance system. Tex.Civ.Prac. & Rem.Code Ann. § 14.005 (Vernon Supp.2000).

■ Wallace filed his lawsuit more than 19 months after he received notice of the written decision on his grievance. His suit was untimely. Tex.Civ.Prac. & Rem.Code Ann. § 14.005(b) (Vernon Supp.2000). The trial court did not err in dismissing Wallace's lawsuit.[3]

Wallace, however, questions how the trial court could allow his suit to go forth at the initial hearing and then dismiss it on procedural grounds at trial. At the initial hearing, the trial court did not have before it complete information regarding the nature of the 1996 grievances or the dates of their denials because Wallace had not yet complied with section 14.005(a). At the subsequent hearing, however, the trial court did have that information.

■ Wallace also directs this Court's attention to the two-year limitation period for tort claims. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 739 § 2, 1995 Tex. Gen. Laws 3850, 3850 (since amended) (current version at Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.2000)); *Srite v. Owens–Illinois, Inc.* 870 S.W.2d 556, 563 (Tex.App.—Houston [1st Dist.] 1993), *rev'd in part on other grounds, Owens–Illinois, Inc. v. Burt,* 897 S.W.2d 765, 769 (Tex.

1995). The legislature, however, has set forth specific provisions for claims that are subject to the grievance system established under Texas Government Code section 501.008. *See* Tex.Civ.Prac. & Rem. Code Ann. § 14.005 (Vernon Supp.2000). Wallace's claim was such a claim. *See* Tex.Gov't Code Ann. § 501.008(a) (Vernon 1998) (stating that remedy provided by grievance system is exclusive administrative remedy available to inmate for claim for relief against department of corrections that arises while inmate housed in facility operated by department). Under the provisions applicable to claims subject to the grievance system, the trial court "shall dismiss a claim" if the inmate does not file it before the 31st day after he receives the decision from the grievance system. Tex. Civ.Prac. & Rem.Code Ann. § 14.005(b) (Vernon Supp.2000). Even were we to consider this specific provision as conflicting with the general two-year limitations period for personal injury, the more specific provision applicable to inmates' claims governed by the grievance system controls. *See Graf v. Harris County,* 877 S.W.2d 82, 84 (Tex.App.—Houston [1st Dist.] 1994, writ denied).[4]

We overrule Wallace's issue two. Because of our disposition of this issue, we

---

3. Even were we to view the 1998 grievance as encompassing a different matter than the 1996 grievances, the 1998 grievance would appear to be untimely under the administrative directives in effect at the time Wallace filed the 1998 grievance. Those directives required an inmate to submit a step-one grievance within 15 days of the incident at issue.

4. Government Code section 501.008(e) provides:

The limitations period applicable to a claim arising out of the same operative facts as a claim for which the grievance system provides the exclusive remedy:

(1) is suspended on the filing of the grievance; and

(2) remains suspended until the earlier of the following dates:

(A) the 180th day after the date the grievance is filed; or

(B) the date the inmate receives the written decision described by Subsection (d)(1). Tex. Gov't Code Ann. § 501.008(e) (Vernon 1998). When an inmate must initiate a grievance within 15 days of an incident, and when the department decides the grievance within a few weeks thereafter, the general limitations period will not have run by the time the inmate must file suit in district court under Texas Civil Practice and Remedies Code section 14.005(b). The 31 day period for filing suit in section 14.005(b) serves a reasonable purpose by allowing the judicial system an opportunity to address legitimate claims and injuries in a timely and efficient manner. *See Randle v. Wilson,* 26 S.W.3d 513, 516 (Tex. App.—Amarillo, 2000, no pet.).

need not address Wallace's issues one and three.

We affirm the judgment.